UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WILLIAM LATHERS | CIVIL ACTION |
| VERSUS | NO. 10-128 |
| NELSON COLEMAN CORR. CTR., ET AL. | SECTION "D"(1) |

## SUPPLEMENTAL REPORT AND RECOMMENDATION

Plaintiff, William Lathers, a state prisoner, filed this civil action pursuant to 42 U.S.C. § 1983. In the original complaint, he named the Nelson Coleman Correctional Center, Warden John Nowak, and Sheriff Greg Champagne as defendants and stated his claims as follows:

> Defendants above in violation of prisoners due process procedural, civil rights. (1) Prisoners are denied Administrative Remedy upon request unless they stay reason for. (2) Drinking water is unsanitary kept and prisoners force to drink out same cooler that prisoner stick there hands for ice! (3) The prison is charging for hair-cuts and the barber isn't a license professional. Plus, inmates only get a cut on certain week of the month. (4) 52 prisoners with top and bottom bunks is a hazard and an accident awaiting. (5) Pre-Trial, Sentence prisoners and D.O.C. are all together on same dorm, which is unconstitutional. (6) Ventilation is not enough for such a crowded place. (7) Prisoners are denied proper medical treatment, due to not having enough money in their account. Example: A prisoner wanted dental service and was told he need to have at least $50 dollars in his prison account. (8) This State House facility isn't equip for state sentence prisoner, nor is there enough programs for prisoner rehabilitative into the community. (9) Living quarter is unsanitary, by having to eat so close to the toilet. Emergency to use restroom, we all must see, smell and take in such unsanitary awareness. (10) Prisoners safety is intentionally put into danger, by placing Pretrial on same tier (dorm). (11) Open dorm as B-2 is an open for 52 prisoners with two (2) medium vent and smaller dorms is half of 52 has one vent. The air isn't fresh enough for such overcrowding at Nelson Coleman Corr. Ctr.[1]

---

[1] Rec. Doc. 1, pp. 4-5.

As relief, he requested:

> Classify as a class action claim!
> Prisoners of this claim seeks monetary damages for such cruel and unusual punishment, mental anguish, defamation, and we all seek immediately transfer to a state facility.
> Monetary sum of $25,000.[2]

On January 28, 2010, the undersigned issued a report recommending that plaintiff's claims be dismissed with prejudice as frivolous and for otherwise failing to state a claim on which relief may be granted.[3] Plaintiff objected.[4] The United States District Judge construed the objections as a motion to amend or modify the complaint. The matter was then referred back to the undersigned to determine whether that motion should be granted and, if so, to reissue a Report and Recommendation taking into consideration the amended pleadings.[5] To better understand the proposed amendments, the Court held a Spears hearing on March 17, 2010.[6]

---

[2] Rec. Doc. 1, p. 4.

[3] Rec. Doc. 4.

[4] Rec. Doc. 5.

[5] Rec. Doc. 6.

[6] See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed.R.Civ.P. 12(e) motion for more definite statement. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996). Spears hearing testimony becomes a part of the total filing by the *pro se* applicant. Id.

## Motion to Amend

Because the complaint has never been served,[7] plaintiff is entitled to amend it once as a matter of course. Fed.R.Civ.P. 15(1). Accordingly, the motion to amend or modify the complaint should be granted. Plaintiff's complaint should nevertheless still be dismissed for the following reasons.

## Standards of Review

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
> (i) is frivolous or malicious;

---

[7] The undersigned directed the Clerk of Court to withhold issuance of summons in this case in light of the determination that the claims were subject to immediate dismissal as frivolous and for otherwise failing to state a claim on which relief may be granted.

>   (ii) fails to state a claim on which relief may be granted; or
>   (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted), cert. denied, 128 S. Ct. 1230 and 1231 (2008). The United States Supreme Court recently explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citations and quotation marks omitted).

Although broadly construing plaintiff's complaint, as amended, and his Spears hearing testimony,[8] the undersigned again recommends that plaintiff's claims be dismissed as frivolous and for otherwise failing to state a claim on which relief may be granted.

Request to Pursue Lawsuit as a Class Action

As a preliminary matter, the Court notes that plaintiff asks that he be allowed to pursue this matter as a class action. However, *pro se* litigants should not be allowed to serve as class representatives. As the United States Tenth Circuit Court of Appeals has noted:

> Under Rule 23(a)(4) [of the Federal Rules of Civil Procedure], a class representative must "fairly and adequately protect the interests of the class." A litigant may bring his own claims to federal court without counsel, but not the claims of others. This is so because the competence of a layman is clearly too limited to allow him to risk the rights of others.

Fymbo v. State Farm Fire & Casualty Co., 213 F.3d 1320, 1321 (10th Cir. 2000) (internal quotation marks and citations omitted); see also Wetzel v. Strain, Civ. Action No. 09-7633, 2009 WL 5064445, at *1 (E.D. La. Dec. 16, 2009); Luna v. Kliebert, Civ. Action No. 09-3853, 2009 WL 2175773, at *1 n.1 (E.D. La. Jul. 17, 2009), aff'd, No. 09-30701, 2010 WL 678087 (5th Cir. Feb. 26, 2010); Sosa v. Strain, Civ. Action No. 06-9040, 2007 WL 1521441, at *7 (E.D. La. May 22, 2007). A *pro se* plaintiff's tenacity and zeal "are no substitute for the skill and experience which are needed to prosecute an action on behalf of a class." Mackenzie v. Local 624, International Union of Operating Engineers, 472 F.Supp. 1025, 1033 (N.D. Miss. 1979); see also Luna, 2009 WL 2175773, at *1 n.1; Sosa, 2007 WL 1521441, at *7.

---

[8] The court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

### Request for Transfer to a State Facility

It is next noted that plaintiff requests that the Court order that he be transferred to another facility. The Court has no authority to issue such an order. Placement of state prisoners is a matter left to the discretion of state officials. A prisoner has no constitutional right springing from the Constitution itself or from any protected liberty or property interest arising from state law to be housed in any particular facility or to be transferred from one prison facility to another, even if life in one prison may be much more disagreeable than in another. Olim v. Wakinekona, 461 U.S. 238, 245-46 (1983); Montanye v. Haymes, 427 U.S. 236, 242 (1976); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996); Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995); Jackson v. Cain, 864 F.2d 1235, 1250 (5th Cir. 1989); Maddox v. Thomas, 671 F.2d 949, 950 (5th Cir. 1982); Davis v. St. Charles Parish Correctional Center, Civ. Action No. 10-98, 2010 WL 890980, at *3 (E.D. La. Mar. 8, 2010); Oatis v. St. Tammany Parish Sheriff's Office, Civ. Action No. 09-6266, 2009 WL 3566120, at *3 (E.D. La. Oct. 29, 2009); George v. Travis, Civ. Action No. 07-986, 2007 WL 1428744, at *8 n.12 (E.D. La. May 10, 2007).[9]

### Nelson Coleman Correctional Center/St. Charles Parish Jail

In the original complaint, plaintiff named the Nelson Coleman Correctional Center as a defendant. In the amended complaint, he modified the complaint to identify that defendant as the St. Charles Parish Jail. However, regardless of which name is used for the facility, plaintiff's claim

---

[9] Moreover, the Court notes that Louisiana law expressly provides: "[A]ny individual subject to confinement in a state adult penal or correctional institutional shall be committed to the Louisiana Department of Corrections and not to any particular institution within the jurisdiction of the department." La.Rev.Stat.Ann. § 15:824(A). State law further expressly provides that, when necessary, state prisoners may be confined in parish jails. La.Rev.Stat.Ann. § 15:824(B)(1)(a).

against the facility is improper. A jail is a building, not a "person" subject to suit under 42 U.S.C. § 1983. Davis, 2010 WL 890980, at *3; Lathers v. Nelson Coleman Correctional Center, Civ. Action No. 07-2891, 2007 WL 1702780, at *2 (E.D. La. June 11, 2007); see also Elsensohn v. Jefferson Parish Correctional Center, Civ. Action No. 09-2759, 2009 WL 5088744, at *2 (E.D. La. Dec. 23, 2009); Smith v. St. Tammany Parish Sheriff's Office, Civ. Action No. 07-3525, 2008 WL 347801, at *2 (E.D. La. Feb. 6, 2008); Francis v. United States, Civ. Action No. 07-1991, 2007 WL 2332322, at *2 & n.4 (E.D. La. Aug. 13, 2007); Castillo v. Blanco, Civ. Action No. 07-215, 2007 WL 2264285, at *4 (E.D. La. Aug. 1, 2007); Martinez v. Larpenter, Civ. Action No. 05-874, 2005 WL 3549524, at *5 (E.D. La. Nov. 1, 2005); Cullen v. DuPage County, No. 99-C-1296, 1999 WL 1212570, at *1 (N.D. Ill. Dec. 14, 1999); Whitley v. Westchester County Correctional Facility Administration, No. 99-CIV-0420(SS), 1997 WL 659100, at *7 (S.D.N.Y. Oct. 22, 1997); Powell v. Cook County Jail, 814 F.Supp. 757, 758 (N.D. Ill. 1993); Brooks v. Pembroke City Jail, 722 F.Supp. 1294, 1301 (E.D.N.C. 1989); Mitchell v. Chester County Farms Prison, 426 F.Supp. 271, 274 (E.D. Pa. 1976).

### Warden John Nowak and Sheriff Greg Champagne

In the original complaint, plaintiff also named Warden Nowak and Sheriff Champagne as defendants. However, plaintiff has not stated proper claims against those defendants in either their official or individual capacities.

"Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999). Accordingly, official-capacity claims against these defendants would in reality be claims

against the local governmental entity they serve, i.e. the St. Charles Parish Sheriff's Office. The United States Fifth Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (quotation marks, brackets, and citations omitted). Further, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." Colle v. Brazos County, Texas, 981 F.2d 237, 245 (5th Cir. 1993); see also Wetzel v. Penzato, Civ. Action No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009). Rather, he must *identify* the policy or custom which allegedly caused the deprivation of his constitutional rights. See, e.g., Murray v. Town of Mansura, 76 Fed. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 Fed. App'x 315, 316 (5th Cir. 2003); Wetzel, 2009 WL 5125465, at *3. In the instant case, plaintiff does not allege that his constitutional rights were violated as a result of a policy or custom, much less identify such a policy or custom, and, therefore, no official-capacity claim has been properly stated.

Plaintiff also has not properly stated individual-capacity claims against Warden Nowak and Sheriff Champagne. "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted). Additionally,

8

"[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). Here, plaintiff makes no allegations whatsoever against Warden Nowak and Sheriff Champagne. Moreover, those defendants cannot be held vicariously liable for the actions of their subordinates pursuant to 42 U.S.C. § 1983. Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987); see also Oliver, 276 F.3d at 742 ("Section 1983 does not create supervisory or *respondeat superior* liability.").

In any event, the Court also notes that plaintiff's underlying claims are also subject to dismissal for the following reasons.

## Administrative Remedy Procedure

In both his original and amended complaint, plaintiff challenged the jail's administrative remedy procedure. That claim is frivolous. It is clear that an inmate does not have a constitutional right to an adequate and effective grievance procedure or to have his complaints investigated and resolved to his satisfaction. Propes v. Mays, 169 Fed. App'x 183, 184-85 (5th Cir. 2006); Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005); Davis v. St. Charles Parish Correctional Center, Civ. Action No. 10-98, 2010 WL 890980, at *5 (E.D. La. Mar. 8, 2010); Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826, at *3 (E.D. La. Oct. 1, 2009); Tyson v. Tanner, Civ. Action No. 08-4599, 2009 WL 2883056, at *5 (E.D. La. Aug. 25, 2009); George v. Travis, Civ. Action No. 07-986, 2007 WL 1428744, at *7 (E.D. La. May 10, 2007); Mahogany v. Miller, Civ. Action No. 06-1870, 2006 WL 4041973, at *1 (E.D. La. Aug. 3, 2006), appeal dismissed, 252 Fed. App'x 593 (5th Cir. 2007).

Drinking Water

In both his original and amended complaint, plaintiff claimed that prisoners drink from the same cooler into which they stick their hands for ice. Even if this allegation is true, the situation does not rise to the level of a constitutional violation, especially where no physical harm has resulted. Davis, 2010 WL 890980, at *9; Roper v. Strain, Civ. Action No. 10-341, 2010 WL 923151, at *4 (E.D. La. Mar. 8, 2010); Wilkerson v. Champagne, Civ. Action No. 03-1754, 2003 WL 22872106, at *2 (E.D. La. Nov. 28, 2003).[10]

---

[10] The Court notes that, with respect to this and other claims, plaintiff complained that conditions are better on the trusty dorm. Even if that is true, the different treatment does not rise to the level of a constitutional violation. It is a common practice for jail administrators to provide a range of conditions of confinement as a way to manage inmate behavior. Officials are allowed to use a trusty program to reward well-behaved prisoners with better conditions and additional benefits and privileges, just as they are also allowed to use administrative segregation, with its attendant spartan conditions and restrictions on privileges and benefits, to punish bad behavior. As long as *all* prisoners are still afforded constitutional conditions of confinement, it is of no moment that some are treated better and some worse based on their behavior. See, e.g., Roberts v. Pegelow, 313 F.2d 548, 550 (4th Cir. 1963) ("If one is given greater freedom of movement than another, or if one becomes a trusty, while many do not, such routine matters of prison administration ought not to become the subject of judicial controversy.").

Moreover, to the extent that plaintiff was perhaps attempting to claim that such "favoritism" violated the Equal Protection Clause, his claim fares no better. To state an equal protection claim, a plaintiff's allegations must have two prongs: (1) "that he received treatment different from that received by similarly situated individuals" and (2) "that the unequal treatment stemmed from a discriminatory intent." Taylor v. Johnson, 257 F.3d 470, 473 (5th Cir. 2001). In this case, plaintiff fails to satisfy either prong. First, plaintiff is making an invalid comparison. He compares his conditions of confinement as a non-trusty inmate to those of the trusties. Those two categories of prisoners are not "similarly situated." Watts v. Johnson, Civ. Action No. 7:07-cv-00323, 2007 WL 2110341, at *3 (W.D. Va. July 18, 2007), aff'd, 252 Fed. App'x 548 (4th Cir. 2007). The only relevant comparison for equal protection purposes would be whether plaintiff was treated differently than *other non-trusty inmates*. Second, even if two categories of prisoners were considered to be similarly situated, plaintiff's claim would still fail. He does not allege, and there is certainly no evidence to show, that the different treatment stems from animus, ill will, or any discriminatory intent. Additionally, there is clearly a rational basis for the different treatment, i.e. to promote good behavior by affording trusties better conditions of confinement.

### Haircuts

In the original complaint, plaintiff claimed that the prison barber is unlicensed, available only one week per month, and inmates are charged for haircuts. Those claims are frivolous.

There is nothing in the federal constitution which requires that prisons use only licensed barbers or have barbers available at all times. Moreover, having a barber available only once per month clearly does not pose an unconstitutional hardship or constitute "cruel and unusual" punishment. See Wilson v. Seiter, 501 U.S. 294, 298 (1991) ("[O]nly those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." (citation omitted)). Lastly, there is no constitutional requirement that non-indigent inmates be provided with free haircuts. Boyd v. Nowack, Civ. Action No. 09-7639, 2010 WL 892995, at *4 (E.D. La. Mar. 11, 2010); Davis, 2010 WL 890980, at *5. On the contrary, it is clear that such prisoners may be charged for all manner of services and supplies they receive. See, e.g., Cotner v. Knight, No. 95-6105, 1995 WL 441408, at *13 (10th Cir. July 21, 1995) (non-indigent inmates may be charged for photocopies and postage); Cummings v. Gusman, Civ. Action No. 09-144, 2009 WL 1649737, at *3 n.11 (E.D. La. June 9, 2009) (non-indigent inmates may be charged for hygiene supplies); Coleman v. Whitney, Civil Action No. 06-2285, 2006 WL 3791316, at *2 (E.D. La. Dec. 21, 2006) (non-indigent inmates may be charged for medical services); Hutchinson v. Belt, 957 F.Supp. 97 (W.D. La. 1996) (same).

### Bunk Beds

In his original complaint, plaintiff stated: "52 prisoners with top and bottom bunks is a hazard and an accident awaiting." It is unclear whether plaintiff was contending that the inherent

danger was posed by the bunk beds or by the number of prisoners in the dormitory setting, but the Court rejects either contention. As an initial matter, the claim is purely conclusory, and conclusory allegations are insufficient to support a civil rights claim. See, e.g., Richards v. Johnson, 115 Fed. App'x 677, 678 (5th Cir. 2004); Arnaud v. Odom, 870 F.2d 304, 307 (5th Cir. 1989). Second, bunk beds are used throughout society, in places ranging from children's bedrooms to military barracks, and there is no evidence that they are inherently dangerous. Davis, 2010 WL 890980, at *10. Likewise, dormitory-style housing of large numbers of prisoners is frequently used in correctional facilities, and, without more, is neither unconstitutional nor inherently dangerous.

## Shared Housing

In both his original and amended complaints, plaintiff challenged the prison's practice of confining both convicted inmates and pretrial detainees in the same dorm. However, it is not *per se* unconstitutional to house pretrial detainees and convicted inmates together. United States Magistrate Judge Joseph C. Wilkinson, Jr., in an opinion subsequently adopted by United States District Judge Carl Barbier, explained:

> In Jones v. Diamond, 636 F.2d 1364 (5th Cir. 1981), the Fifth Circuit stated that
>
>> [t]he confinement of pretrial detainees *indiscriminately* with convicted persons is unconstitutional unless such a practice is 'reasonably related to the *institution's interest in maintaining jail security,*' or physical facilities do not permit their separation. Of course, if a particular pretrial detainee has a long record of prior convictions or is likely to be violent, imposition of greater security measures is warranted .... Nonetheless, pretrial detainees have a due process right to be considered individually *to the extent security and space requirements permit*.
>
> Id. at 1374 (quoting Bell v. Wolfish, 441 U.S. 520, 531 (1979)) (additional citations omitted) (emphasis added). Thus, the Fifth Circuit in Jones recognized that the

12

> housing of pretrial detainees with convicted inmates may raise constitutional concerns, but only if their classification together is handled indiscriminately without justification, Pembroke v. Wood County, 981 F.2d 225, 228 (5th Cir. 1993), but it also recognized that some circumstances will permit the housing of pretrial detainees with convicted inmates.
>
> Significantly, the classification of inmates is an administrative function of the prison. Jones, 636 F.2d at 1376. Courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation. Bell, 441 U.S. at 547-48; Smith v. Bingham, 914 F.2d 740, 742 (5th Cir. 1990). "Inmates have a federal right to due process at prison classification ... only if state law contains 'substantive predicates' limiting the prison administrators' discretion to classify, assign, and punish inmates." Ricker v. Leapley, 25 F.3d 1406, 1409 (8th Cir. 1994); accord Woods v. Edwards, 51 F.3d 577, 582 (5th Cir. 1995) (citing Hewitt v. Helms, 459 U.S. 460, 469-70 (1983)); Canterino v. Wilson, 869 F.2d 948, 953 (6th Cir. 1989) (citing Hewitt, 459 U.S. at 472). "Classification of inmates in Louisiana is a duty of the [jailer] and an inmate has no right to a particular classification under state law." Woods, 51 F.3d at 581-82 (quotation omitted).
>
> Thus, "[i]nmates have no protectable property or liberty interest in custodial classification. The classification of prisoners is a matter within the discretion of prison officials. Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials." Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998) (citations omitted), abrogated on other grounds by Booth v. Churner, 532 U.S. 732, 735 (2001); accord Jones v. Roach, No. 05-60530, 2006 WL 2474746, at *1 (5th Cir. Aug. 28, 2006); Wilkerson v. Stalder, 329 F.3d 431, 436 (5th Cir. 2003).
>
> The Fifth Circuit's decision in Jones v. Diamond specifically states that limitations on physical facilities might justify housing pretrial detainees with convicted inmates, that pretrial detainees have a right to be considered individually only to the extent that security and space requirements permit and that imposition of greater security measures is warranted if an inmate has a long record of prior convictions or is likely to be violent. Jones, 636 F.2d. at 1374.

McKay v. Terrebonne Parish Sheriff's Office, Civ. Action No. 06-5570, 2007 WL 163059, at *4-5 (E.D. La. Jan. 17, 2007) (footnote omitted); see also Bland v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 09-4407, 2009 WL 3486449, at *4-5 (E.D. La. Oct. 23, 2009).

In any event, the general policy favoring such status-based segregation is to protect the pretrial detainees from the perhaps more dangerous convicted inmates, not *vice versa*. Plaintiff is

13

a *convicted inmate*,[11] and he certainly has no colorable claim arising from the fact that he is housed with detainees. Davis v. St. Charles Parish Correctional Center, Civ. Action No. 10-98, 2010 WL 890980, at *8 (E.D. La. Mar. 8, 2010).

### Ventilation

In the original complaint, plaintiff alleged that the dorm ventilation is inadequate. However, such conclusory claims of inadequate ventilation, without more, implicate no federal constitutional right. Johnson v. Texas Board of Criminal Justice, 281 Fed. App'x 319, 321 (5th Cir. 2008); Johnson v. Thaler, No. 99-20222, 1999 WL 1131941, at *1 (5th Cir. Nov. 12, 1999); Parker v. Smith, No. 93-5542, 1994 WL 198944, at *2 (5th Cir. May 6, 1994); Davis, 2010 WL 890980, at *7; Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826, at *3 (E.D. La. Oct. 1, 2009).

### Medical Treatment

In both his original and amended complaints, plaintiff claimed that the medical treatment at the jail is inadequate, and he added Kecia Charles as a defendant with respect to that claim in the amended complaint. Specifically, he alleged that Charles, the jail's medical director, denied medical care unless the prisoners could pay for it. Plaintiff testified extensively concerning the claim at the Spears hearing, giving three examples in support of his allegation.

First, he testified that he experienced dental problems while incarcerated. Plaintiff was told that he had two options. First, the physician would arrange to have the problem teeth pulled at the jail, which was an expense the jail would cover. Second, plaintiff could elect to try to save the teeth

---

[11] See Rec. Doc. 1, p. 3, § III(A).

14

by having a root canal; however, if plaintiff elected that option, it would be at his expense and would cost $250.00. Because plaintiff had no money, he elected the first option and had the teeth extracted.

Second, plaintiff injured his ankle while playing basketball, and he wanted to be sent to a hospital for an operation. The jail physician took an x-ray and determined that there was "no problem." Therefore, plaintiff was told that the jail would not pay for him to be taken to a hospital or for an operation. Plaintiff said his ankle still causes him problems.

Third, plaintiff complained that he is not provided the "proper pain pills" he needs for his ankle. Plaintiff stated that the medical personnel would not prescribe pain medication for him, but he was told that he could elect to purchase over-the-counter medications from the commissary at his own expense if he felt he needed them.

It is clear that the constitutional rights of an incarcerated person, whether he is a pretrial detainee or a convicted prisoner, may be violated if his serious medical needs are met with deliberate indifference on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999). The United States Fifth Circuit Court of Appeals has explained that "[d]eliberate indifference is an extremely high standard to meet." Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). Of particular relevance to the instant case, the Court of Appeals has further explained: "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006)

(footnote and quotation marks omitted). Moreover, the mere fact that another doctor might have reached a different conclusion is not determinative. Differences of opinion among physicians as to the appropriate method of treatment do not constitute deliberate indifference. Campbell v. Martinez, No. Civ. A. 4:03-CV-299-Y, 2003 WL 22410576, at *3 (N.D. Tex. May 14, 2003), aff'd, 96 Fed. App'x 237 (5th Cir. 2004); see also Muse v. Warner, No. 93-2413, 1993 WL 543340 (5th Cir. Dec. 15, 1993 ) ("The disagreement in diagnosis between the initial doctor and the subsequent doctors does not equal denial of medical care or show deliberate indifference."). For the following reasons, it is evident from plaintiff's Spears hearing testimony that his medical claims arise from a difference of opinion, not deliberate indifference.

As for plaintiff's dental problem, he was not *denied* medical care; his problem was corrected through the extractions. Plaintiff is simply complaining that jail officials would not provide his preferred, but not medically required, alternative treatment, i.e. a free root canal. However, the federal constitution does not require that a prisoner be allowed to demand a costlier form of treatment when a cheaper but still effective treatment will suffice. The mere fact that a prisoner's medical treatment "may not have been the best money could buy" is simply insufficient to establish a constitutional violation. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); see also Gobert, 463 F.3d at 349 ("deliberate indifference exists wholly independent of an optimal standard of care"); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978) (the applicable legal standard is not whether an inmate was provided the "optimum" or "best" medical care available).

As for the alleged ankle injury, plaintiff again simply disagrees with the care offered. He was not *denied* treatment; on the contrary, x-rays were taken and no injury was found. Clearly, the

federal constitution does not require that a prisoner be sent to sent to a hospital for additional care or treatment when medical tests indicate that no such additional treatment is necessary.[12]

Likewise, as for the denial of free pain medication, there was no constitutional violation because the medical staff determined that such medication was not necessary for his purported but medically uncorroborated ankle injury. It is clear that neither the fact that a prisoner continues to experience pain despite treatment nor the fact that jail physicians refuse to provide him with the specific pain medications he requests is sufficient to state a constitutional claim. Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); see also Spruill v. Gillis, 328 Fed. App'x 797, 801 (3rd Cir. 2009) ("At worst, [prison doctors] were overly suspicious that [the inmate] was engaging in drug-seeking behavior or overdramatizing his level of pain. If so, that does not amount to an Eighth Amendment violation."). When the jail's physician and nurse, in their medical judgment, determined that pain medication was not medically necessary, it was not unconstitutional for them to explain that such medication would not be provided free on demand but instead could, at plaintiff's election, be purchased at the commissary if he had sufficient funds and chose to spend them in that manner.

---

[12] Even if it could ultimately be shown that the jail medical staff erred in diagnosing the existence or extent of plaintiff's injury, his federal claim would still fail. It is indisputable that an incorrect diagnosis simply does not suffice to state a claim for deliberate indifference. Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001); Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004). Rather, misdiagnosis amounts to nothing more than negligence or malpractice which alone is never sufficient to state a federal claim for constitutionally inadequate medical care. Hall v. Thomas, 190 F.3d 693, 697 (5th Cir. 1999); see also Kelly, 2007 WL 2007992, at *4; Cerna, 2004 WL 42602, at *2. Claims of negligence or malpractice are for the state courts, not a federal court. See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Cerna, 2004 WL 42602, at *2.

Lack of Programs for Convicted Prisoners

In his original complaint, plaintiff challenged the jail's failure to offer rehabilitative programs for convicted prisoners. That claim is frivolous because there is no constitutional right to educational or rehabilitative services or programs in prison. Beck v. Lynaugh, 842 F.2d 759, 762 (5th Cir. 1988); Davis v. St. Charles Parish Correctional Center, Civ. Action No. 10-98, 2010 WL 890980, at *10 (E.D. La. Mar. 8, 2010); Morrison v. Gusman, Civ. Action No. 10-217, 2010 WL 724173, at *6 (E.D. La. Feb. 22, 2010); Oatis v. St. Tammany Parish Sheriff's Office, Civ. Action No. 09-6266, 2009 WL 3566120, at *2-3 (E.D. La. Oct. 29, 2009); Oglesby v. Gusman, Civ. Action No. 09-3593, 2009 WL 3254145, at *2 (E.D. La. Oct. 7, 2009); Sampson v. Corrections Corporation of America, No. 08-CV-0915, 2009 WL 837640, at *16 (W.D. La. Mar. 26, 2009); Wilbon v. Gusman, Civ. Action No. 05-2443, 2006 WL 2119458, at *2 (E.D. La. July 25, 2006).

Unsanitary Living Conditions

In the original and amended complaints, plaintiff claimed that inmates are forced to live in unsanitary conditions. Admittedly, there is a point beyond which a prison cell's conditions are so unsanitary as to render them unconstitutional. See, e.g., Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004) (confinement in "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls" was unconstitutional). However, the conditions alleged by plaintiff clearly do not rise to that level. Further, the Court notes that plaintiff stated in the amended complaint and at the Spears hearing that inmates are given cleaning supplies *once per day*. That daily provision of cleaning supplies is clearly sufficient to negate plaintiff's claim. See, e.g., Davis v. Scott, 157 F.3d 1003, 1006 (5th Cir. 1998); Ellis v. Crowe, Civ.

Action No. 09-3061, 2010 WL 724158, at *16 (E.D. La. Feb. 19, 2010). Moreover, the mere fact that his dorm is not always as sanitary as he would like does not render the conditions unconstitutional. See Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) ("[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions."); Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1989) (noting that the Constitution does not protect prisoners from "discomfort and inconvenience" and that prisoners "cannot expect the amenities, conveniences, and services of a good hotel").

Lastly, in connection with this claim, plaintiff specifically complained that inmates must eat in the same vicinity as the toilet. While that may be unpleasant, it is not unconstitutional. Davis v. St. Charles Parish Correctional Center, Civ. Action No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010); Morrison v. Gusman, Civ. Action No. 10-217, 2010 WL 724173, at *5 (E.D. La. Feb. 22, 2010); Hill v. Smith, Civ. Action No. 09-0811, 2010 WL 148272, at *6-7 (W.D. La. Jan. 12, 2010).

## RECOMMENDATION

It is therefore **RECOMMENDED** that the motion to amend or modify the complaint, Rec. Doc. 5, be **GRANTED** and that the motion be filed into the record as an amended complaint.

It is **FURTHER RECOMMENDED** that plaintiff's claims be **DISMISSED WITH PREJUDICE** as frivolous and for otherwise failing to state a claim on which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[13]

New Orleans, Louisiana, this twenty-second day of March, 2010.

_____
**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[13] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.